LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: (415) 395-0600
Fax: (415) 395-8095

LATHAM & WATKINS LLP
Alexander C.K. Wyman (Bar No. 295339)
*alex.wyman@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Tel: (213) 485-1234
Fax: (213) 891-8763

*Attorneys for Defendant*
*POLICYGENIUS LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE TORRES AND MATTHEW DE FELICE JR., on behalf of themselves and all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>POLICYGENIUS, LLC.,<br><br>Defendant(s). | CASE NO. 2:24-cv-00166-SB-PD<br><br>DEFENDANT POLICYGENIUS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT<br><br>*[[Proposed] Order filed concurrently herewith]*<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br>Date: April 12, 2024<br>Time: 8:30 a.m.<br>Place: Courtroom 6C<br><br>Action Filed: February 12, 2024<br>Trial Date: None |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on April 12, 2024, at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Stanley Blumenfeld Jr. of the United States District Court for the Central District of California, Courtroom 6C, 350 West 1st Street, Los Angeles, California 90012, Defendant Policygenius LLC ("Defendant") will move, and hereby does move, this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing the claims asserted by Plaintiffs Valerie Torres and Matthew De Felice Jr. ("Plaintiffs") in this purported Consolidated Class Action Complaint (ECF No. 21) with prejudice for lack of subject matter jurisdiction and failure to state a claim.

Defendants' Motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the [Proposed] Order; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

This Motion is made following the conference of counsel pursuant to Local Civil Rule 7-3, which took place on February 29, 2024, at which the parties were unable to resolve the substantive issues addressed in this Motion.

Dated: March 8, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Michael H. Rubin*
Michael H. Rubin

*Attorney for Defendant*
*Policygenius LLC*

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Policygenius's Website, the Pixel, and CAPI ..... 3

B. Plaintiffs' Alleged Injuries ..... 4

C. Plaintiffs' Claims ..... 5

III. LEGAL STANDARD ..... 6

A. Federal Rule of Civil Procedure 12(b)(1) ..... 6

B. Federal Rule of Civil Procedure 12(b)(6) ..... 6

IV. ARGUMENT ..... 7

A. Plaintiffs Lack Standing ..... 7

B. Alternatively, Plaintiffs Fail to State Any of Their Claims ..... 10

1. The Wiretap Claims Fail ..... 10

a. Plaintiffs Have Not Sufficiently Alleged "Contents" ..... 11

b. Plaintiffs Have Not Sufficiently Pled an "Interception" ..... 13

c. The ECPA Claim Fails Because Policygenius Consented to Any Alleged Sharing of Information ..... 15

2. The California Privacy Tort Claims Fail ..... 16

a. Plaintiffs Do Not Allege a Reasonable Expectation of Privacy ..... 17

b. Plaintiffs Do Not Allege a Highly Offensive Intrusion ..... 18

C. The Equitable Claims Fail ..... 19

1. Plaintiffs Have an Adequate Remedy at Law ..... 19

2. Plaintiffs Lack UCL Standing ..... 20

3. Unjust Enrichment Is Not an Independent Cause of Action ..... 21

V. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Page(s)**

### CASES


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 6

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595 (9th Cir. 2019) .......... 6

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 10

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 6, 8, 9

*Cohen v. Casper Sleep Inc.*, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......... 16

*Cousin v. Sharp Healthcare*, 2023 WL 4484441 (S.D. Cal. July 12, 2023) .......... 9, 19

*Drake v. Toyota Motor Corp.*, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) .......... 7, 20

*Drake v. Toyota Motor Corp.*, 2021 WL 2024860 (C.D. Cal. May 17, 2021) .......... 20

*Esparza v. Gen Digital, Inc.*, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 16

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) .......... 19

*Griffith v. TikTok*, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) .......... 21

*Griffith v. TikTok, Inc.*, 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) .......... 6, 21

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 11, 12

*Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) .......... 11, 13

*Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741 (C.D. Cal. June 25, 2015) .......... 15

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 8

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 17

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 20, 21

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 17

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 15

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 17

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 18

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 15, 17

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11, 12

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 16, 17

*Klaehn v. Cali Bamboo LLC*,
2022 WL 1830685 (9th Cir. June 3, 2022) .......... 20

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 20

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 9

*Loo v. Toyota Motor Sales USA, Inc.*,
2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) .......... 20

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 16

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .......... 8, 9

*Pena v. Gamestop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 10

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 18

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ........ 6

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 21

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 19

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016) ........ 7, 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 6, 7, 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 3707181 (N.D. Cal. May 24, 2023) ........ 14

*Valenzuela v. Super Bright LEDs, Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........ 13, 15

*Warner v. Tinder, Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ........ 14

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 18

## STATUTES

18 U.S.C.
§ 2511(1) ........ *passim*
§ 2511(2)(d) ........ 15

Cal. Bus. & Prof. Code
§§ 17200 *et seq.* ........ 5

Cal. Pen. Code
§§ 630 *et seq.* ........ 5
§ 631(a) ........ 10, 13

## RULES

Fed. R. Civ. P.
12(b)(1) .......... 6
12(b)(6) .......... 6

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III, § 2 .......... 6, 7, 8, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' complaint offers innuendo and irrelevant hypotheticals to mischaracterize the use of commonplace technology on the website of Policygenius LLC ("Policygenius"). The complaint's conclusory and frequently contradictory allegations fail to establish that Plaintiffs suffered harm, or that Plaintiffs have plausibly stated a claim. The complaint should be dismissed.

Plaintiffs allege that Policygenius uses a commonplace piece of code on its website, the Meta (formerly, Facebook) Pixel (the "Pixel").[1] Plaintiffs further allege that Policygenius has installed other Meta "Business Tools," but they name just one, the Conversions Application Programming Interface ("CAPI"). Plaintiffs concede "there is no way to confirm" Policygenius uses CAPI, but allege "it is reasonable to infer" its use solely because Facebook recommends it. Compl. ¶ 50, ECF No. 21. The complaint is steeped with similar conjecture substituting for plausibility.

For example, Plaintiffs go to great lengths to allege the ways that the Pixel and CAPI *could* be configured to operate on a website. But when alleging how the technology actually operates on the Policygenius website, Plaintiffs spear themselves on both prongs of their approach. First, they hurl conclusory hyperbole, unsupported by factual allegations, accusing Policygenius of allowing Meta to read Plaintiffs' "most confidential and sensitive information," and medical information that could result in "discrimination in the workplace or denial of insurance coverage." Compl. ¶ 2. Second, Plaintiffs attempt to shore up their conclusory statements by describing a hypothetical Policygenius website visitor's experience on the website. While Plaintiffs' claims depend on alleged sharing of medical information in the context of purchasing life insurance, this hypothetical visitor—

---

[1] Plaintiffs erroneously describe the code as the "Facebook Pixel" and allege that it shares information with "Facebook." Policygenius disagrees with the characterization of the technology but understands Plaintiffs to be referring to the Meta Pixel and Meta, respectively. *See id.* ¶ 15 n.4 (citing Meta sources describing the Pixel).

the only visitor about whom Plaintiffs offer *any* factual allegations—shops for *homeowners insurance*. The information that this hypothetical visitor allegedly shares with Policygenius, such as zip codes, addresses, and length of residence, even if plausibly alleged—which it is not—provides no support for the conclusory "sensitive health information" allegations that are essential to Plaintiffs' claims. Plaintiffs attempt to burnish their hyperbolic and hypothetical claims by including screenshots, which the complaint alleges "confirm that [the Pixel shares] the user's Private Information." *Id.* ¶ 73. But the screenshots are shorn of context and, even if accepted on their face, actually show that the Pixel does not share the contents of any sensitive information with Meta.

Plaintiffs' claims must accordingly fail for two reasons. First, with no injury, Plaintiffs cannot establish that they have standing to bring this case. Mere allegations that Plaintiffs "searched for life insurance," *id.* ¶ 23, and disclosed sensitive health information while doing so, and that this (unalleged) sensitive information was somehow shared with Meta are insufficient to establish that *these Plaintiffs* were injured. For this reason alone, the Court must dismiss the complaint.

Second, Plaintiffs do not plausibly state a claim for relief. They assert that Policygenius violates the California Invasion of Privacy Act ("CIPA") and the federal Electronic Communications Privacy Act ("ECPA") by aiding Meta in "wiretapping" or "intercepting" user communications. But Plaintiffs do not plausibly allege that Meta intercepted substantive communications or how or when interception occurred. Moreover, they fail to state an ECPA claim because Plaintiffs concede that Policygenius consents to the use of the Pixel on the website.

Plaintiffs' remaining claims also fail. Their claims for invasion of privacy and intrusion upon seclusion fail because Plaintiffs do not plausibly allege that they had a reasonable expectation of privacy or that Policygenius acted in a "highly offensive" manner. Their equitable claims fail because they have not alleged an inadequate

remedy at law, they lack statutory standing to bring their UCL claims, and unjust enrichment is not a standalone cause of action in California.

For these reasons, the Court should dismiss the complaint in its entirety.

## II. FACTUAL BACKGROUND

### A. Policygenius's Website, the Pixel, and CAPI

Policygenius operates an online insurance marketplace, www.policygenius.com, that allows consumers to search for and compare quotes for various insurance policies, including home and auto, life, and disability insurance. Compl. ¶¶ 3, 29. Like most companies that operate a website, Policygenius utilizes software tools to inspect, analyze, and improve the customer experience, as well as to reach new customers. *See id.* ¶¶ 9, 34 (alleging that Policygenius uses tools to improve marketing). These tools include technology from established software providers such as Meta. Plaintiffs allege that two of these tools operate on the Policygenius website—the Pixel and CAPI.

**The Pixel:** The Pixel allows web developers both to measure certain actions taken by users on the developers' website and to assess and improve the effectiveness of the developers' advertising. *See id.* ¶¶ 7–9. Website operators can configure the Pixel to recognize certain events, such as making a purchase, and share the occurrence of that event with Meta. *See id.* ¶ 36 n.8.

To demonstrate how the Pixel works, Plaintiffs purport to expose the "behind the scenes" of the website by embedding alleged screenshots of code. *Id.* ¶¶ 72–73, 78. Plaintiffs claim that these screenshots "confirm" that Policygenius sends users' communications, which contain "Private Information," to Meta. *Id.* But Plaintiffs do not allege how the screenshots show the sharing of private information. For example, one screenshot appears to show the communication of a value: "ev: Lead." *See id.* ¶ 73. Plaintiffs hand-wave at the screenshot and call it "patently clear" evidence that the Pixel shares sensitive information, but they do not explain what "ev: Lead" means or how it constitutes private information or communications. *Id.* ¶ 86.

**CAPI:** Plaintiffs also allege that they believe (but cannot confirm) that Policygenius has installed CAPI on the website to perform a similar tracking function as the Pixel. *Id.* ¶¶ 15, 50, 53 (alleging that "[w]hile there is no way to confirm with certainty that a Web host" has installed CAPI, "it is reasonable to infer" it has done so). Even though Plaintiffs do not actually know whether Policygenius utilizes CAPI, they *do* know one thing: that CAPI functions differently than the Pixel. While the Pixel allegedly "bugs" a user's browser, CAPI "stores" a user's communications "on the website owner's servers" after the user's communication has completed. *Id.* ¶ 15. Only then does CAPI "transmit[] the data to Facebook." *Id.*

**B. <u>Plaintiffs' Alleged Injuries</u>**

The complaint generally alleges that through a combination of the Pixel and CAPI, Policygenius "surreptitiously duplicate[s] and send[s] its customers' private communications to Facebook," communications that purportedly include "protected PHI/individually identifiable medical information." *Id.* ¶ 5.

As to Ms. Torres and Mr. De Felice, the complaint alleges superficially that they "used the website to search for life insurance quotes" and, "[i]n doing so, [they] provided Policygenius with [their] PII and health information." *Id.* ¶¶ 23, 25. Because they use Facebook, they assert that the Pixel uses their unique Facebook identifiers to associate them with their Policygenius browsing activity. *Id.* ¶ 26. While much of the rest of the complaint includes vague gestures at the sensitive medical information that Plaintiffs disclosed, Plaintiffs do not specify *what* sensitive health information they allegedly shared.

The only specific allegations come via reference to a hypothetical website visitor that seeks homeowners insurance.[2] Plaintiffs detail what could happen should this homeowners insurance shopper interact with the website. *See id.* ¶ 69

[2] The complaint does not provide an equivalent hypothetical for a user seeking life or disability insurance, which may require the disclosure of the sensitive medical information that is the purported *gravamen* of the claims. Nonetheless, Plaintiffs twice refer to this hypothetical homeowners insurance shopper as a "patient." *See id.* ¶¶ 69, 86.

(describing what might happen "[i]f a consumer uses the Website to find home insurance"). Put another way, they do not allege that any *actual* user actually *did* search for homeowners insurance. This hypothetical user, according to Plaintiffs, might communicate the following information while seeking homeowners insurance: (1) a zip code; (2) the ownership status of a property she wants to insure; (3) her current home insurance agency; (4) the length she has lived at her current property; (5) the property's mortgage rate; and (6) whether it is her primary residence. None of this information bears any relation to the "health information" that Plaintiffs allege they communicated to Policygenius and which is the bedrock for their causes of action. *See, e.g.*, *id.* ¶¶ 151–52 (alleging privacy violations because Policygenius allegedly shares "sensitive, confidential communications and protected health information"). Further, these allegations are at odds with how the Pixel actually operates based on the screenshots provided by Plaintiffs. For example, the screenshot Plaintiffs offer at Paragraph 73 shows, at most, that the Pixel shares an event (the generation of a lead)—not a user's zip code (or any of the other allegedly transferred data).

According to Plaintiffs, Meta takes the data from the Pixel and associates it with a user's Facebook ID, which allows the user's communications to be linked to their identity. *See id.* ¶¶ 67, 76.

**C. <u>Plaintiffs' Claims</u>**

Plaintiffs assert six causes of action, which can be grouped into three categories. Claims 1 and 5, the "Wiretap Claims," assert violations of CIPA, Cal. Pen. Code §§ 630 *et seq.*, and ECPA, 18 U.S.C. § 2511(1), respectively. Claims 2 and 3, the "Privacy Claims," assert an invasion of privacy under the California Constitution and the common-law tort of intrusion upon seclusion, respectively. Finally, Claims 4 and 6, the "Equitable Claims," assert violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and unjust enrichment/quasi-contract, respectively. *See generally* Compl. ¶¶ 124–209.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a litigant may seek dismissal of an action for lack of subject matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiffs have "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Under Article III of the Constitution, federal courts may only resolve "'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). If a plaintiff lacks constitutional standing to bring suit, there is no case or controversy, and the Court must dismiss for lack of subject matter jurisdiction. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *2 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.).

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) requires dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint must "contain sufficient, 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state a 'plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019). A complaint is facially plausible when "the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conversely, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," there is no plausibility. *Griffith v. TikTok, Inc.*, 2023 WL 7107262, at *3 (C.D. Cal. Oct. 6, 2023) (Blumenfeld, J.). While factual allegations in the pleadings are assumed to be true, a court is not "bound to accept as true a legal conclusion couched as a factual allegation," and should be guided by "judicial experience and common sense." *Ashcroft*, 556 U.S. at 678–79.

## IV. ARGUMENT

Plaintiffs' claims fail for two reasons. First, they have failed to establish an injury in fact and thus lack standing. Second, even if the Court were to reach the merits of their pleading, Plaintiffs fail to plausibly state any of their claims.

### A. <u>Plaintiffs Lack Standing</u>

For a plaintiff to establish that they have standing to bring suit, they must plausibly allege that they have "(1) suffered an injury in fact, (2) that is fairly traceable to . . . the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury-in-fact, a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and actual or imminent, not conjectural or *hypothetical*." *Id.* at 339 (emphasis added). This remains true even in a putative class action complaint, as the standing inquiry is only satisfied once the "named plaintiff demonstrates her individual standing to bring a claim." *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (Blumenfeld, J.).

For Article III purposes, an "injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. "Traditional tangible harms," such as physical or monetary harms, are unquestionably "concrete." *Id.* at 425. The same goes for certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* But courts must not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard." *Id.* Thus, "Article III requires a concrete injury *even in the context of a statutory violation*." *Id.* at 426, 462 ("Importantly, this Court has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute . . . purports to authorize [a] person to sue to vindicate [a statutory] right." (emphasis added)). It is therefore not enough to allege in conclusory fashion, with no supporting facts, that a defendant simply violated a

statutory right or committed a tort. *See id.* at 427 ("Article III grants federal courts the power to redress harms that defendants cause to plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.").

This rule is no different in the data privacy context. Although the common law, CIPA, and ECPA protect individuals from invasions of privacy, a plaintiff bringing such claims must still allege that he or she suffered concrete harm. *See Sterling Jewelers*, 2023 WL 2996686, at *3. Mere conclusory assertions of "a violation of CIPA or invasion of the plaintiff's right to privacy [are] insufficient to confer standing." *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024); *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (in data privacy cases, "courts must examine the nature of the specific information" the plaintiff allegedly communicated to "determine whether privacy interests were implicated at all").

Plaintiffs here do not come close to showing an actual, concrete harm. The only non-conclusory allegation they plead about the "harm" that *they* (not a hypothetical user) suffered is that they "accessed www.policygenius.com from [their] mobile device[s] and used the website to search for life insurance quotes." Compl. ¶¶ 23, 25. All of their remaining allegations are conclusory. *See, e.g.*, *id.* ¶¶ 25–26, 62 (alleging that Plaintiffs provided Policygenius with "sensitive and private PII and health information," and that Plaintiffs "communicated their Private Information to [Policygenius]"). Plaintiffs' only non-conclusory sharing allegations involve the "hypothetical user's" experience—not their own. *See id.* ¶¶ 69–88. Plaintiffs cannot end-run the standing requirement to plead actual harm by way of hypothetical. *See Spokeo*, 578 U.S. at 339 (injuries may not be hypothetical). In any event, the hypothetical—a user seeking homeowners insurance—bears no relation to Plaintiffs' alleged reason for visiting the website, to "search for *life* insurance," and the allegedly shared information bears no relation to the conclusory allegations that Meta received "sensitive and private PII and health information," which are

essential to the claims. Compl. ¶¶ 23, 25, 69. Put another way, there is an "insufficient fit between the" harm alleged and the facts actually pleaded. *Sterling Jewelers*, 2023 WL 2996686, at *3.

Courts regularly find that a data privacy plaintiff's attempt to bootstrap claims through reference to a hypothetical user does not establish an actual injury. In *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023), for example, the court dismissed all of the plaintiffs' claims because they had "fail[ed] to factually explain their personal participation" in any improper disclosure of information via the Pixel. The plaintiffs' complaint in *Cousin* shared defects eerily similar to those here, relying heavily on the experience of a hypothetical user while alleging next to nothing about the actual plaintiffs.[3] The court found that the plaintiffs could not "maintain their theory of the case" when they could not "explain what information they provided," even where they gave "significant detail" about a "search by a hypothetical patient." *Id.* Other California district courts, including this Court, agree. *See Sterling Jewelers*, 2023 WL 2996686, at *3 (this Court holding that a plaintiff who fails to "identify any specific personal information" that was communicated has not "identified any harm to [their] privacy"); *Mikulsky*, 2024 WL 251171, at *5 (bare allegations that a plaintiff inputted her "personal information" are insufficient for standing); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (allegations that a plaintiff used the defendant's website to "obtain information on flight pricing" did not show a "concrete harm").

Plaintiffs have not alleged concrete, tangible facts about the harm that they allegedly suffered. As such, they lack standing, and this Court must dismiss the complaint for lack of subject matter jurisdiction.

[3] Plaintiffs' counsel, John Nelson, also represented a named plaintiff in *Cousin*. *See id.* at *1. As this Court has recognized, a plaintiff does not "identif[y] any harm to her privacy" through "cookie cutter" allegations. *Sterling Jewelers*, 2023 WL 2996686, at *3 and n.4; *see also supra* n.2 (citing the complaint's references to Policygenius website visitors as "patients").

### B. Alternatively, Plaintiffs Fail to State Any of Their Claims

#### 1. The Wiretap Claims Fail

Plaintiffs bring the Wiretap Claims under Cal. Pen. Code § 631(a) and 18 U.S.C. § 2511(1), the California and federal anti-wiretapping statutes (the "Wiretap Statutes"). *See* Compl. ¶¶ 126, 183. The analysis for a "violation of CIPA is the same as that under the federal Wiretap Act," with the exception that CIPA requires all parties to consent to the recording of a conversation, while ECPA requires only one party to consent. *Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023). The Wiretap Statutes impose liability on any "person" who "willfully and without the consent of all parties to the communication . . . reads, or attempts to read, *or to learn the contents or meaning of any* . . . communication *while the same is in transit*." Cal. Pen. Code § 631(a) (emphasis added); *see also* 18 U.S.C. § 2511(1) (establishing liability for intercepting and "intentionally disclos[ing]" the contents of any "electronic communication"). The statutes create direct liability for those who perform the wiretap, and also impose aiding and abetting liability on those who conspire with another to wiretap. Cal. Pen. Code § 631(a); *see also* 18 U.S.C. § 2511(1) (same).

A website owner such as Policygenius cannot be directly liable for wiretapping—it is the intended recipient of a user's communications. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1064–65 (C.D. Cal. 2023) (noting the "fundamental aspect" of wiretapping law that "[p]arties to a conversation cannot eavesdrop on their own conversation"). Plaintiffs do not (and cannot) allege that Policygenius was somehow not a party to any alleged communications. Therefore, the only viable wiretapping claim against Policygenius is one for aiding and abetting. And there can be no such liability if a wiretap never occurred. *Id.* at 1066–67.

Plaintiffs do not sufficiently allege that a wiretap occurred for two reasons. First, they have not pleaded that any party accessed the "contents" of their

communications. Second, they have not pleaded that the Pixel or CAPI intercepts their communications "in transit."

#### *a. Plaintiffs Have Not Sufficiently Alleged "Contents"*

For purposes of the Wiretap Statutes, the term "contents refers to the intended message conveyed by the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). A communication does not contain "contents" if it only includes "record information," or information that does not constitute the "substance, purport, or meaning of a communication." *Id.* "Record information" includes the "'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer." *Id.*; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (noting that communications contain record information if they "only reveal a general webpage address and basic identification information"). To survive a motion to dismiss, a plaintiff must actually allege what he or she communicated. Courts will not "assume out of whole cloth what the contents of any communications were." *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *5 (C.D. Cal. Dec. 26, 2023). A plaintiff who fails to allege which "substantive communications . . . that she believes" were shared fails to allege "protected contents." *Id.*

Plaintiffs cannot sufficiently allege the "contents" prong for two reasons. First, as discussed in detail above, they allege no particularized facts about the substance of their communications. They only conclusorily allege that they used the website to "search for life insurance quotes" and thus shared "PII and health information." Compl. ¶¶ 23, 25.

Second, even if the Court were to consider Plaintiffs' "hypothetical user" allegations, that user's communications contained no "contents." Plaintiffs purport to show exactly what information Policygenius allegedly shares with Meta by displaying screenshots of the website's code, alleging that these screenshots "undoubtedly" show the transmission of personal information. *Id.* ¶ 72. But the

screenshots, on their face, show nothing of the sort, and Plaintiffs make no effort to explain how these screenshots support their allegations. For example, at Paragraph 72, Plaintiffs incorporate a picture that shows several rows in a table with little surrounding context, which Plaintiffs claim shows the "behind the scenes portion of the website" allegedly sharing user information 19 separate times. *Id.* But nothing about the screenshot plausibly suggests *any*, let alone 19, transmissions of data. The rows in the table are titled, *inter alia*, "common.js," "tr?id=682897698520376," and "events." *Id.* Plaintiffs do not explain what these entries are, why they are being sent, or what personal (let alone sensitive) information they contain.

At Paragraph 73, Plaintiffs refer to another screenshot, alleging that it "confirm[s] that the communications Defendant sends to Facebook contain the user's Private Information." *Id.* ¶ 73. But even if the contextless screenshot and surrounding allegations are taken as true, they contradict rather than confirm the allegations. The screenshot allegedly shows that the Pixel communicated "ev: Lead." This string of characters says nothing about the contents of any communications that a website visitor, let alone Plaintiffs, made with Policygenius. Plaintiffs allege that "ev: Lead" "identifies the user as having used the website in the URL." *Id.* ¶ 75. Yet Plaintiffs do not say what URL, and even if the Court permits Plaintiffs' conclusory leap that "ev: Lead" relates to some URL, they end up no closer to plausibility. Plaintiffs cannot merely gesture at a URL's existence and proclaim it as "contents," because a URL is not "contents" if it merely shows "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga*, 750 F.3d at 1106. The only URL portrayed in the screenshot is a *Facebook* URL, not a Policygenius URL, and in any event Plaintiffs do not, and cannot, plausibly allege that the screenshot identifies the "substance, purport, or meaning" of Plaintiffs' information. *Id.* at 1107. This failure to allege contents is fatal to the Wiretap Claims. *See Hammerling*, 615 F. Supp. 3d at 1093 (finding no "contents" where the alleged communications did not allow Google to

"read the specific information . . . that a user inputs"); *Heiting*, 2023 WL 9319049, at *5 (finding no "contents" where complaint "did not allege any substantive communications").

***b. Plaintiffs Have Not Sufficiently Pleaded an "Interception"***

An entity does not engage in wiretapping unless it intercepts communications "in transit." Cal. Pen. Code § 631(a). Therefore, to maintain their Wiretap Claims, Plaintiffs must allege that any purported wiretapping occurred simultaneously with their communications. *See Valenzuela v. Super Bright LEDs, Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) ("For communications with a website to be intercepted, they must be acquired during transmission . . . a narrow definition limited to acquisition contemporaneous with transmission." (cleaned up)). Plaintiffs must therefore allege that Meta "read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received," not that it was acquired while "in electronic storage." *Id.*

Plaintiffs allege that Policygenius allows Meta to "intercept" their communications via two pieces of code: the Pixel and CAPI. Because they make conclusory and contradictory allegations about *how* each piece of code functions, they fail to allege interception as to either.

***The Pixel:*** Plaintiffs' allegations regarding the Pixel's functionality are vague, conclusory, and, fatally, contradictory.

At the outset, the allegations are vague and conclusory, as they simply repeat without explanation that the Pixel "contemporaneously" "intercepts" communications because it somehow "bugs" and "manipulates" a user's browser. *See* Compl. ¶¶ 6, 11. They also allege that the Pixel acts "much like a traditional wiretap" by forcing the user's browser to communicate directly with Facebook's server. *Id.* ¶¶ 37, 41, 47. But nowhere do Plaintiffs allege facts as to how or when the interception occurs, which they must. *See Heiting*, 2023 WL 9319049, at *6

(finding that a plaintiff failed to plead interception when he alleged "in general terms" that the interception was triggered through "code," without "additional factual details to make clear when the interception occurred"); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) ("Plaintiff alleges Defendant's code 'allows the [third party] to secretly intercept [communications] in real time' . . . [But] [h]ow do these third parties interface with Defendant's [] platform other than via 'code'?"). Thus, *at best*, Plaintiffs make out only conclusory allegations as to how the Pixel operates.

But Plaintiffs' theory as to how the Pixel functions is not merely unclear. Even more fatally, their allegations contradict each other. For example, in the portion of the complaint where they purport to expose the "behind the scenes" of the website, Plaintiffs assert that it is not, in fact, the user's browser that shares information with Meta. Rather, they claim that it is the *website* or, in some instances, *Policygenius itself* that allegedly shares the information. *See* Compl. ¶ 73 ("[T]he images below confirm that the communications *Defendant sends* to Facebook . . . ."); ¶ 78 ("Facebook receives at least six cookies when *Defendant's website* transmits information via the Pixel."); ¶ 86 ("*Defendant* is actively sending patient communications to Facebook.") (emphases added). Plaintiffs have thus not put Policygenius on notice of what its alleged wrongdoing is: does Policygenius use software that maliciously manipulates users' browsers? Or does Policygenius share user information after receipt? Plaintiffs cannot have it both ways.[4]

That Plaintiffs are unable to explain the Pixel's basic functionality without contradicting themselves demonstrates the inherent implausibility of their

---

[4] Plaintiffs also try to have it both ways on Policygenius's privacy policy. They rely on it when they believe it helps them, but otherwise disclaim notice of it. *Compare id.* ¶ 137 (stating that Policygenius's "'Privacy Policy' acknowledges the confidential nature of private medical information"), *with id.* ¶ 113 ("Plaintiffs were not presented with a conspicuous clickwrap listing the privacy policy hyperlinks."). The Court need not consider Plaintiffs' consent to dismiss their claims. But insofar as Plaintiffs have incorporated the privacy policy into the Complaint, Plaintiffs' acceptance of the policy also mandates dismissal.

allegations and mandates dismissal of the CIPA claim. *See Warner v. Tinder, Inc.*, 105 F. Supp. 3d 1083, 1098 (C.D. Cal. 2015) ("[T]he complaint's allegations are inherently contradictory, which warrants dismissal of the [] claim."); *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations . . . fail to comply with Rule 8, *Twombly*, and *Iqbal*.").

***CAPI:*** Plaintiffs' CAPI allegations fare even worse. Courts in the Ninth Circuit are clear that an interception cannot occur if the communication is acquired while it is in "electronic storage," rather than in transit. *See Super Bright LEDs*, 2023 WL 8424472, at *8. Thus, when Plaintiffs allege that CAPI "records *and stores* [user] information *on the website owner's servers*, and *then* transmits the data to Facebook *from the website owner's servers*," they affirmatively plead that CAPI is not a wiretap. Compl. ¶ 15 (emphasis added). Because Plaintiffs themselves allege that CAPI does not engage in the *sine qua non* of a wiretap, *i.e.*, the interception of communications in transit, their CAPI-based claim must fail.

#### ***c. The ECPA Claim Fails Because Policygenius Consented to Any Alleged Sharing of Information***

As discussed above, ECPA is similar to CIPA in nearly every way but one: CIPA requires that both parties consent to a wiretap, whereas ECPA needs only one party to consent. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful" for a person to intercept a communication "where one of the parties to the communication has given prior consent . . . ."). Thus, the "consent of one party is a complete defense to a [federal] Wiretap Act claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). Here, Plaintiffs themselves allege Policygenius's consent—indeed, the complaint is rife with allegations that Policygenius purposefully installed Meta's code.

To avoid this, Plaintiffs attempt to invoke ECPA's crime-tort exception, which defeats a consent defense if, and only if, the "primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs

tortiously." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014). To that end, they allege that Policygenius's primary motivation was to "commit tortious acts," *i.e.*, the "use of Private Information for advertising in the absence of express written consent." Compl. ¶ 98. Putting aside that Plaintiffs have not sufficiently alleged that any personal information was shared with Meta, the crime-tort exception does not apply where the defendant's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023); *see also Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (where a defendant's "real purpose" in allegedly disclosing user data was "marketing," the plaintiff failed "to demonstrate that Defendants' primary purpose was to commit a tort"). Plaintiffs allege several times that Policygenius uses Meta's software to "bolster its profits" by "optimiz[ing] the delivery of ads, measur[ing] cross-device conversions, creat[ing] custom audiences, and decreas[ing] advertising and marketing costs." Compl. ¶¶ 9, 61. Thus, by their own admissions, Plaintiffs cannot invoke the crime-tort exception, and their ECPA claim fails due to Policygenius's consent.

**2. The California Privacy Tort Claims Fail**

Plaintiffs assert two Privacy Claims, both premised upon the acts underlying the Wiretap Claims: (1) an invasion of privacy under the California Constitution; and (2) the common-law tort of intrusion upon seclusion. Compl. ¶¶ 145–71. As the tests for each claim are nearly identical, courts "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy; and (2) the intrusion was highly offensive." *Esparza v. Gen Digital, Inc.*, 2024 WL 655986, at *5 (C.D. Cal. Jan. 16, 2024). Plaintiffs fail to plead facts to support either element—particularly because "the California Constitution and the common law set a high bar" for intrusions to be actionable. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

***a. Plaintiffs Do Not Allege a Reasonable Expectation of Privacy***

To determine whether a user has shown that they had a reasonable expectation of privacy in their communications, a court must look to the "nature of the intrusion." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Whether a user should reasonably expect their communications to be private depends on the "customs, practices, and circumstances surrounding the data collection," including the amount and sensitivity of data collected, the manner of collection, and the "defendant's representations to its customers." *Katz-Lacabe*, 668 F. Supp. 3d at 941. Critically, for a court to answer the "reasonable expectation" question, the plaintiff must identify with specificity what, if any, sensitive information about them a third party received. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) ("Plaintiffs have not alleged sufficient information about the conversations that were allegedly intercepted and recorded to establish that they were had under circumstances that would give rise to a reasonable expectation of privacy. That deficiency is fatal to Plaintiff's claims.").

Plaintiffs thus fail to show a reasonable expectation of privacy for two reasons.

***First***, as discussed previously, they have not alleged any facts to show that Meta received *their* sensitive information. Accordingly, for the same reason that Plaintiffs do not have standing, they have not alleged a reasonable expectation of privacy. *See, e.g.*, *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) ("Plaintiffs['] allegations are far too conclusory and speculative. Without more particular pleading, the Court cannot determine . . . if the data collected is 'sensitive and confidential' information."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 ("The problem for Plaintiffs in the instant case, however, is that to the extent Plaintiffs intend to allege that they have a privacy interest . . . their allegations are fatally conclusory.").

***Second***, even if the Court were to consider the "hypothetical user" allegations, Plaintiffs have failed to show a reasonable expectation of privacy in the information allegedly shared in the hypothetical. Courts "have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); *accord Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (holding that there is no "cognizable privacy interest" in routine browsing data collected "while users interact with the website of the defendant company"). Here, the complaint's hypothetical homeowners insurance applicant allegedly discloses their zip code, the "status of the ownership of the property they are seeking to insure," their "current home insurance agency," the "length of their policy," the "address of the property they are seeking to insure, the type of home it is, specify if it is the user's primary residence, the length of residency there, and the mortgage rate of the home." Compl. ¶¶ 70–71. This is not the type of information in which a user has a reasonable expectation of privacy. Rather, California privacy claims protect "sensitive" or "intimate" personal information. *Vizio*, 238 F. Supp. 3d at 1233; *accord Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (finding no reasonable expectation of privacy where defendant captured "the user's payment card information, including card number, expiration date, and CCV code," the "user's location," and all of the "user's mouse clicks" and "keystrokes," because this information was not "intimate or sensitive"). If a user's credit card and location are not "intimate or sensitive," then neither are a zip code, homeownership status, or the length of the user's current insurance policy.

#### ***b. Plaintiffs Do Not Allege a Highly Offensive Intrusion***

Plaintiffs also fail to allege the second element of their privacy claims: that any intrusion was "highly offensive." In determining whether an intrusion is highly offensive, courts consider factors such as the "likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives,

and whether countervailing . . . social norms render the intrusion inoffensive." *Cousin*, 2023 WL 4484441, at *6. Routine commercial behavior, even where a business "obtain[s] [a] plaintiff's address without his knowledge and permission" and then "us[es] it to mail him coupons," is not "highly offensive." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011); *accord Cousin*, 2023 WL 4484441, at *6 (disclosure of "names, emails, phone numbers, addresses, social security numbers, browsing histories, and user locations" during "routine browsing activity [does not] rise to the level of 'highly offensive'").

Because Plaintiffs do not allege what information they communicated, they cannot sustain their assertion that Meta's intrusion was "highly offensive." *Cousin*, 2023 WL 4484441, at *6 (where plaintiffs failed to allege the information that was shared, a court cannot find that any intrusion was offensive). That aside, even the information shared by the hypothetical user—addresses, zip codes, etc.—is routine commercial information collected during routine browsing activity. At bottom, it is no different from the conduct in *Folgelstrom*. In both cases, the defendant (or a third party) allegedly acquired certain information without permission. In both cases, that information was allegedly used to advertise to the plaintiff(s). And as in *Folgelstrom*, such activity cannot rise to the level of "highly offensive."

### C. <u>The Equitable Claims Fail</u>

Finally, Plaintiffs assert two claims in equity: (1) violations of the UCL; and (2) unjust enrichment/quasi-contract. *See* Compl. ¶¶ 172–82, 201–09. Both claims fail because Plaintiffs have pleaded an adequate remedy at law, and thus are precluded from seeking equitable relief. Further, each fails individually for claim-specific reasons.

#### 1. Plaintiffs Have an Adequate Remedy at Law

Claims for equitable relief, including claims for restitution, disgorgement, and injunctions under the UCL, are proper only if a plaintiff lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Conclusory or "alternative" assertions that a plaintiff lacks an adequate remedy do not suffice. *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022); *see also Drake*, 2020 WL 7040125, at *14 ("[A] party does not avoid federal equitable principles merely because the equitable claim is pled in the alternative."). Where a plaintiff seeks both legal and equitable relief for the "same factual predicates," the equitable claims must be dismissed. *Loo v. Toyota Motor Sales USA, Inc.*, 2019 WL 7753448, at *13–14 (C.D. Cal. Dec. 20, 2019).

Plaintiffs' only assertions that they lack an adequate remedy at law are entirely conclusory or alternative in nature. *See, e.g.*, ¶ 181 ("In the alternative to those claims seeking remedies at law, Plaintiffs . . . allege that there is no plain, adequate, and complete remedy that exists at law."); ¶ 209 ("Plaintiffs . . . seek [an unjust enrichment claim] because their legal remedies are inadequate."). The complaint lacks any "substantive allegations that [Plaintiffs] lack an adequate legal remedy." *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (Blumenfeld, J.). Thus, their equitable claims must be dismissed.

**2. Plaintiffs Lack UCL Standing**

For a plaintiff to have standing to sue under the UCL, the plaintiff must allege that she "lost money or property." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011). California courts have interpreted the UCL as having a "substantially narrower" standing analysis than "federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries." *Id.* at 324. For this reason, the Ninth Circuit has found allegations that plaintiffs were harmed by the "dissemination of their personal information and by losing the sales value of that information" are insufficient to establish UCL standing. *In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014).

Here, Plaintiffs allege only that they "lost money or property" because of the "diminished [] value of" their data and because Policygenius allegedly prevented

Plaintiffs from "capturing the full value of their Personal Information."[5] Compl. ¶ 180. In other words, they allege the exact type of harm that the Ninth Circuit and this Court have held insufficient to establish UCL standing. *See In re Facebook Privacy Litig.*, 572 F. App'x at 494; *see also Griffith*, 2023 WL 7107262, at *11 ("Plaintiff . . . does not allege specific facts showing that she could have sold [her] data . . . that she has ever attempted or intended to sell her data, or that Defendants' collection of that data, without more, has impeded her ability to sell her data."). Thus, Plaintiffs' UCL claim should be dismissed for lack of statutory standing.

### 3. Unjust Enrichment Is Not an Independent Cause of Action

California does not "recognize unjust enrichment as an independent cause of action." *Griffith v. TikTok*, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023) (Blumenfeld, J.) (noting that this conclusion "finds ample support in other federal and California decisions"). Plaintiffs attempt to plead around this deficiency by alleging that "the court [can] construe the cause of action as a quasi-contract claim." Compl. ¶ 202. But to do so, the Court must find that Plaintiffs chose "not to sue in tort, [and] instead to seek restitution on a quasi-contract theory." *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021). Plaintiffs have decidedly chosen *not* to waive their tort claims—by "proceeding with their tort and statutory claims," they have expressly opted to "sue in tort." *Id.* Thus, Plaintiffs are "not entitled to restitution under a quasi-contract theory," and this claim must be dismissed. *Id.*

[5] Nowhere do Plaintiffs explain why they would try to sell their sensitive health information, the disclosure of which they allege would result in "discrimination in the workplace or denial of insurance coverage." *Id.* ¶ 2.

## V. CONCLUSION

For these reasons, Policygenius respectfully requests that the Court dismiss the complaint with prejudice.

Dated: March 8, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By *<u>/s/ Michael H. Rubin</u>*
Michael H. Rubin

*Attorney for Defendant*
*Policygenius LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Policygenius LLC, certifies that this brief contains 6984 words, which complies with the word limit set by L.R. 11-6.1 and the Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr., at 10, as revised on March 1, 2024.

Dated: March 8, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Michael H. Rubin*
Michael H. Rubin

*Attorney for Defendant Policygenius LLC*

**CERTIFICATION OF MEET AND CONFER**

I certify that the parties met by videoconference on February 29, 2024, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated: March 8, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Michael H. Rubin*
Michael H. Rubin

*Attorney for Defendant Policygenius LLC*